IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Eddie Lane, ) | Civil Action No.: 3:18-cv-01386-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| New Gencoat, Inc., Gencoat, Inc., ) | |
| Genesis Worldwide, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Eddie Lane filed the instant products liability action against Defendants New Gencoat, Inc. ("New Gencoat"), Gencoat, Inc. ("Gencoat"), and Genesis Worldwide, Inc. ("Genesis") (collectively "Defendants") seeking damages for catastrophic injuries to his right hand caused by a shuttle coater machine. (ECF No. 46 at 1.) This matter is before the court on New Gencoat's Motion for Summary Judgment (ECF No. 146) pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the court **GRANTS** New Gencoat's Motion for Summary Judgment (ECF No. 146).

I.   **FACTUAL AND PROCEDURAL BACKGROUND TO PENDING MOTION**

Incorporated on January 16, 1968, Consolidated Systems, Inc. ("CSI") "is a steel fabrication and processing company," which "provides a range of metal processing for construction, transportation, HVAC, lighting, appliance, and other OEM[1] industries." *Consolidated Systems Inc.*, https://www.bloomberg.com/profile/company/841129Z:US (last visited Jan. 3, 2022). CSI's "main lines of business" consist of "Corrugated Metal, Metal

---

[1] "OEM stands for Original Equipment Manufacturer." *What Is an Original Equipment Manufacturer (OEM) in the Automotive Sector?*, https://www.investopedia.com/ask/answers/04 1 515/what-original-equipment-manufacturer-oem-automotive-sector.asp (last visited Jan. 3, 2022).

1

Decking," and Prefabricated Panel Systems. *Consolidated Systems, Inc.*, https://www.Thebluebook.com/iProView/307045/consolidated-systems-inc/manufacturers/ (last visited Jan. 3, 2022).[2] CSI specializes in the application of "coatings and films to a variety of coils or rolls of metal which [are] used in products such as metal roofs, highway road signs, refrigerators, and automobile panels." (ECF No. 159 at 2.) "These coatings [a]re applied by machines called roll coaters." (*Id.*)

On or about April 12, 2000, as an addition to its paint line, CSI submitted a purchase order to Gencoat for a shuttle coater at the cost of $490,000.00. (ECF No. 146-3 at 3.) The purchase order documentation contained the following description for the shuttle coater:

> The Finish Shuttle Coater is designed to apply a precisely metered amount of coating to both sides of the strip simultaneously. The coater comes completely assembled as much as possible and ready for installation in the customer's line. The coater is configured with two topside and a single bottomside-coating head. Each coating head will roll out to the operator and/or drive sides for quick color change, cleaning and maintenance. The drive stands will move with the coating heads and the hydraulics and track system are included. The Finish Coater is designed to apply coatings in a two roll or three roll forward or reverse roll application, in an inline or "V" configuration.

(ECF No. 146-4 at 12.)

Gencoat transported the shuttle coater to CSI in two (2) separate shipments on November 1 and November 8, 2000. (ECF No. 146-5 at 2, 3.) "The major mechanical and electrical components were provided by Gencoat." (ECF No. 146-11 at 6.) "However[,] all system controls, control programming, control and external power wiring, and system integration was provided by others who were independently contracted by CSI to perform this work." (*Id.*) CSI installed the shuttle coater from December 27, 2000, to January 5, 2001. (ECF No. 146-6 at 2–4.) A

---

[2] The court observes that for purposes of document formatting, some links to internet websites cited in this Order may have space(s) in the website URL where there should not be a space(s). If a link containing a formatting space is copied and pasted in a website browser, an error may result as a result of the space.

representative of Gencoat supervised the installation of the shuttle coater.  (*Id.*; *see also* ECF No. 146-4 at 23.)

"The finished shuttle coater has two large heads—a top-side head and a bottom-or back-side head—that are used to apply paint or finishing to the top and bottom of metal that passes through moving rollers."  (ECF No. 146-1 at 3.)  Upon its installation, the shuttle coater weighed 23,150 pounds, was housed in its own room, bolted to the floor, hard-wired into the building, and connected to the main water supply.  (ECF No. 146-9 at 4:3–14; ECF No. 146-10 at 7:3–10:7.)  The following are some of the visuals of the shuttle coater that have been presented by the parties:



(ECF No. 160 at 5; ECF No. 160-4 at 2.)

(ECF No. 160-1 at 4 ("Front side of the finish coater in the non-operational position.").)

3



(*Id.* ("View of the back of the finish coater in the non-operational position . . . .").)

On April 6, 2015, Plaintiff was working for CSI as a coater operator and he "was responsible for the maintenance of the coater rolls, including the subject coater machine." (ECF No. 46 at 4 ¶ 27; ECF No. 159-1 at 2:12–14.) Plaintiff "had been employed by CSI for over a decade . . . ." (ECF No. 147-13 at 2.) On that day, Plaintiff contends that he was cleaning the shuttle coater "when the rag he was using became caught in the in-running nip point and pulled his hand into the machine" resulting in "catastrophic injuries to his right hand, which ultimately led to amputation of his right hand." (ECF No. 159 at 5.)

As a result of his injuries, on March 28, 2018, Plaintiff filed a Complaint in the Richland County (South Carolina) Court of Common Pleas against Defendants, in addition to Genesis Worldwide II Inc.; Pegasus Partners II L.P.; KPS Special Situation Funds L.P.; Mitsubishi Heavy Industries, Ltd; Mitsubishi Heavy Industries America, Inc.; Hitachi Ltd; Hitachi America, Ltd; Mitsubishi-Hitachi Metals Machinery, Inc; Mitsubishi-Hitachi Metals Machinery USA, Inc.; Primetals Technologies Ltd.; Primetals Technologies USA Holdings, Inc.; and Primetals Technologies USA LLC, alleging claims for strict liability, negligence, and breach of express and

implied warranty.  (ECF Nos. 1-1 at 9 ¶ 32–13 ¶ 49.)  On May 21, 2018, Genesis removed the matter to this court.  (ECF No. 1.)  On July 2, 2018, Plaintiff filed an Amended Complaint against Defendants alleging claims for successor liability, strict liability, negligence, breach of express and implied warranties.  (ECF No. 25 at 5 ₽ 36–11 ₽ 59.)  On October 1, 2018, Plaintiff filed a Second Amended Complaint against Defendants to allege the same claims (*see* ECF No. 46 at 5 ₽ 36–11 ₽ 58), but also to provide clarity regarding allegations supporting successor liability.  (*Id.* ₽₽ 39, 40.)  On October 10, 2018, New Gencoat answered the Second Amended Complaint generally denying its allegations.  (*See* ECF No. 48.)  Of particular note, New Gencoat asserted that Plaintiff's claims were barred by the applicable statute of repose located in S.C. Code Ann. § 15-3-640 (West 2022).  (ECF No. 48 at 10.)

New Gencoat filed its first Motion for Summary Judgment on April 10, 2019, addressing the issue of successor liability and asserting that Plaintiff's claims fail under South Carolina's law, and because "successor liability is the sole basis for Plaintiff's claims against [Defendants]," summary judgment is appropriate.  (ECF No. 62 at 5, 10.)  The court denied that Motion finding that without additional discovery, "there is a genuine dispute of a material fact as to whether there is mere continuation and the record provides 'concrete evidence from which a reasonable juror could return a verdict' in Plaintiff's favor."  (ECF No. 100 at 7 (quoting *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015)).)  After conducting discovery, New Gencoat filed the instant Motion for Summary Judgment on October 25, 2021, to which Plaintiff filed a Response in Opposition on November 17, 2021.  (ECF Nos. 146, 159.)  The court heard argument from the parties on November 30, 2021.  (ECF No. 162.)

Thereafter, on December 7, 2021, Plaintiff dismissed his claims without prejudice against Gencoat and Genesis pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.  (*See*

ECF Nos. 170, 174.)

## II.     LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011). In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## III.     ANALYSIS

A.     <u>The Parties' Arguments</u>

New Gencoat moves for summary judgment first asserting that Plaintiff "cannot show that the shuttle coater was defective" because there were adequate warnings on the shuttle coater. (ECF No. 146-1 at 1.) New Gencoat asserts that Plaintiff's "misuse of the shuttle coater bars his claims"

because he "knew that he was cleaning the shuttle coater's moving rolls at a nip point, that it was dangerous to do so, and that it was contrary to the on-product warnings and written safety instructions provided by Gencoat." (*Id.* at 2.) New Gencoat next asserts that Plaintiff's claims "are barred by the eight-year statute of repose for improvements to real property." (*Id.*) Finally, New Gencoat asserts that after conducting discovery, there is no successor liability because the evidence demonstrates that "there is no substantial commonality of ownership between Gencoat and New Gencoat." (*Id.*)

Plaintiff opposes the Motion for Summary Judgment arguing that there is an issue of fact regarding "whether the warnings [on the shuttle coater] were inadequate and included the appropriate content and format in compliance with the guidelines promulgated by the American National Standard Institute in the industry standard relevant to warnings, ANSI Z535." (ECF No. 159 at 10.) He further argues that he "has presented sufficient evidence that a feasible alternative design would render the Shuttle Coater safe through the testimony of experts Dr. Leah Hartman and Mr. Ken Richardson." (*Id.* at 19.) To this point, Plaintiff asserts that the feasibility "of an engineering control, such as an interlocked guard device, on the back of the machine" is also something the court should allow the jury to consider. (*Id.*) Plaintiff also argues that there is an issue of fact as to whether Plaintiff had knowledge of a defect in the shuttle coater and unreasonably made use of the machine despite the danger. (*Id.*) Plaintiff argues that the statute of repose for improvements to real property is inapplicable because the shuffle coater "falls outside the definition of a permanent structural improvement to real estate." (*Id.* at 24.) Finally, Plaintiff argues that the successor liability issue is not any clearer than when originally decided by the court and is still a question for the jury. (*Id.* at 27–30.)

B.     The Court's Review

Of the arguments presented by the parties, the court must at the outset consider the applicability of the statute of repose because it is effectively "an absolute time limit beyond which liability no longer exists" and, therefore, could "extinguish[] the claim[s]" made against New Gencoat. *Linda Mc Co., Inc. v. Shore*, 703 S.E.2d 499, 559 (S.C. 2010) (citation omitted).

"A statute of repose 'creates a substantive right in those protected to be free from liability after a legislatively-determined period of time,' and it 'constitutes a substantive definition of rights rather than a procedural limitation provided by a statute of limitation.'" *Rogers v. Lee*, 777 S.E.2d 402, 405 (S.C. Ct. App. 2015) (quoting *Nash v. Tindall Corp.*, 650 S.E.2d 81, 83 (S.C. Ct. App. 2007)). "Statutes of repose are based upon considerations of the economic best interests of the public as a whole and are substantive grants of immunity based upon a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists." *Langley v. Pierce*, 438 S.E.2d 242, 244 (S.C. 1993) (citation omitted). "To further that purpose, a statute of repose, unlike a statute of limitations, cannot be defeated by estoppel, waiver, or claims of tolling." *Bundrick v. E. Richland Cty. Pub. Serv. Dist.*, No. 2005-UP-225, 2005 WL 7083866, at *2 (S.C. Ct. App. Mar. 31, 2005) (citation omitted). *See also First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 866 (4th Cir. 1989) ("[A] statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body.") (citation omitted).

The statute of repose at issue in this action sets forth a bar to actions based on defective improvements to property. Specifically, South Carolina's Statute of Repose provides that "[n]o actions to recover damages based upon or arising out of the defective or unsafe condition of an

improvement to real property may be brought more than eight years after substantial completion of the improvement."[3]  S.C. Code Ann. § 15-3-640.  "[A]n action based upon or arising out of the defective or unsafe condition of an improvement to real property includes: . . . (3) an action to recover damages for personal injury, death, or damage to property; (4) an action to recover damages for economic or monetary loss; (5) an action in contract or in tort or otherwise; . . . ."  *Id.* at § 640(3)–(5).  In defining what it considers to be an improvement to real property, the Supreme Court of South Carolina observed that an alleged improvement makes property "more valuable," "involve[s] the investment of labor and money," and is "permanent."  *S.C. Pipeline Corp. v. Lone Star Steel Co.*, 546 S.E.2d 654, 656–57 (S.C. 2001).  "Regarding the permanence factor, a court must evaluate whether the addition has 'a lengthy useful life.'"  *Murray v. D.R. Horton, Inc.*, C/A No. 4:15-cv-00191-RBH, 2015 WL 9581758, at *4 (D.S.C. Dec. 30, 2015) (citing *S.C. Pipeline Corp.*, 546 S.E.2d at 657, at n.3 ("Permanence is necessarily a relative term when applied to improvements, since no improvement, whether the Tower of Pisa or the Pyramids at Giza, is truly permanent.  They do, however, have 'lengthy useful lives'-as set forth in the preamble to § 15-3-640.")).

"Whether an addition to real property constitutes an improvement requires a case[-]by[-]

---

[3] The court observes that "[i]t is well settled that a statute of repose and a statute of limitations are neither the same nor analogous."  *Heaton v. Stirling*, C/A No. 2:19-0540-RMG, 2020 WL 838468, at *2 (D.S.C. Feb. 18, 2020).  In this regard, the South Carolina Supreme Court has offered the following distinction between the respective principles:

> A statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action.  A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time.

*Langley*, 438 S.E.2d at 243 (quoting *First United Methodist Church*, 882 F.2d at 865–866) (internal citations omitted).

case determination." *S.C. Pipeline Corp.*, 546 S.E.2d at 657. Like the parties in *Murray*, Plaintiff and New Gencoat do not dispute that the shuttle coater increased the value of CSI's property and required the investment of labor and money. They do, however, dispute the shuttle coater's permanence.[4]

---

[4] The court observes that Plaintiff also suggests that the court should take instruction from the state courts of Washington, which he argues have found that "manufacturers of heavy equipment explicitly fall outside the scope of their statute of repose, as a matter of legislative intent and public policy." (ECF No. 159 at 24–25 (citing *Condit v. Lewis Refrigeration Co.*, 676 P.2d 466, 468 (Wash. 1984)).) However, Plaintiff is unable to cite the court to a South Carolina state court decision reaching a similar conclusion. *Cf. Ervin v. Cont'l Conveyor & Equip. Co.*, 674 F. Supp. 2d 709, 715 (D.S.C. 2009) ("[T]he courts of South Carolina have not had nor taken the opportunity to address industrial equipment within the context of the statute of repose."). *See also Peake v. Suzuki Motor Corp.*, C/A No. 0:19-cv-00382-JMC, 2019 WL 5691632, at *7 (D.S.C. Nov. 4, 2019) ("If, as here, the state's highest court has not directly addressed the specific issue, a federal court 'must anticipate how [the South Carolina Supreme Court] would rule.'" (quoting *Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*, 792 F. 3d 520, 528 (4th Cir. 2015))). In this regard, the court observes that the lack of specific precedential authority on the statute of repose has previously been emphasized by this court:

> [A]s another judge in this district has recognized, "[t]he courts of South Carolina have had relatively few opportunities to interpret and apply the statute of repose in the context of improvements to real property." *Ervin v. Cont'l Conveyor & Equip. Co.*, 674 F. Supp. 2d 709, 713 (D.S.C. 2009). In *Ervin*, the district court conducted an exhaustive survey of the four South Carolina state cases applying the statute of repose in the context of improvements to real property. *See* 674 F. Supp. 2d at 713–15. The district court summarized *South Carolina Pipeline*, *Broome v. Truluck*, 270 S.C. 227, 241 S.E.2d 739 (1978), *Ocean Winds Corp. of Johns Island v. Lane*, 347 S.C. 416, 556 S.E.2d 377 (2001), and (*Florence County School District # 2 v. Interkal, Inc.*, 348 S.C. 446, 559 S.E.2d 866 (Ct. App. 2002)). *See Ervin*, 674 F. Supp. 2d at 713–15. All four cases involved additions [that the court in *Ervin*, but not the state court themselves,] ultimately construed to be improvements to real property: an underground gas pipeline, a garage door at a car dealership, windows installed in condominium units, and bleachers in a high school gym. Such items "clearly fall within the boundaries of the statute of repose." *Ervin*, 674 F. Supp. 2d at 715. *Ervin* involved an industrial conveyor system at a cotton mill. *Id.* at 711–12. Noting the conveyor in question "tests the parameters of the statute of repose," the district court found the conveyor was not permanent in light of the factual circumstances unique to the case—for example, the movability and physical characteristics of the conveyor—even though it had been affixed to the floor and hardwired into the mill's electrical system. *Id.* at 716, 720-22. The district court concluded that "[a]lthough a close question of law," the conveyor[, "the piece of

As to permanence, the court observes that the undisputed facts support a finding that the shuttle coater has had a lengthy useful life at CSI's facility. CSI ordered the shuttle coater for its business on April 12, 2000, and completed installation of the machinery in its facility on January 5, 2001. (ECF No. 146-3 at 3; ECF No. 146-6 at 2–4.) The fully installed shuttle coater weighed 11.5 tons, was bolted to the floor, hard-wired into the building, and connected to the main water supply. (ECF No. 146-9 at 4:3–14; ECF No. 146-10 at 7:3–10:7.) CSI placed the shuttle coater in its own room, and this equipment was still in CSI's facility in the same location during an inspection conducted on July 9, 2021, some twenty (20) years later.[5] (*See* ECF No. 179-4 at 7.) Moreover, both Plaintiff and his expert provided testimony consistent with the aforementioned attributes:

Q. You [Plaintiff] started in 2001 at Consolidated Systems.
A. Yes, sir.
Q. Right. But you didn't start in the coater area for several years before - - after that.
A. Right.
Q. So when you got to the coater area, the prime coater upstairs and the finish coater on which you were injured were already in place, right?
A. Yes, sir.
Q. And during the five years that you worked in the coater area, and I realize there's a gap in between, but during that five-year total, did you ever see the finish coater moved, the entire thing moved to a different place?
A. No, sir.
Q. Would -- and it didn't have any wheels or anything on it?
A. No, sir.

---

    moveable industrial equipment at issue,"] was not a permanent improvement to real property within the meaning of the statute of repose. *Id.* at 722.

*Murray*, 2015 WL 9581758, at *4.

[5] In his Brief in Opposition, Plaintiff asserts that part of the shuttle coater had been disassembled and reoriented resulting in the elevation of the frame by six (6) inches. (*See* ECF No. 159 at 27 (citation omitted). However, the court in *Ervin* acknowledged that just because something can be moved does not mean that it is "readily moveable []or routinely moved." *Ervin*, 674 F. Supp. 2d at 715.

Q. So it was permanently affixed to the floor?

A. Yes, sir.

(ECF No. 146-9 at 4:20–5:16.)

Q. And does it appear from the way -- from what you [Expert Ken Richardson] saw and what you understand from the drawings and these photos that the coater is sort of affixed to [the] building?

A. Oh, yeah. You've got to bolt it down. You don't want to get it out of line with the sheet metal coming through and things of that nature.

Q. Right. And it's a relatively permanent -- it's part of the structure?

A. Right, you can -- yeah, you can unbolt it and move it if you want to, but it's intended to stay there.[6]

Q. Yeah.

A. Until they are really committed to moving it.

Q. Right. And with all of the wiring and hosing and everything it's pretty much affixed?

A. Right.

(ECF No. 146-10 at 9:15–10:7.)

Therefore, upon its consideration of the foregoing record, the court is persuaded that the shuttle coater is permanent for CSI's property and constitutes an improvement to real property. *Contra Ervin v. Cont'l Conveyor & Equip. Co.*, 674 F. Supp. 2d 709, 720 (D.S.C. 2009) ("[T]he conveyor system in this case is not only capable of being moved, but was actually disassembled and moved to a new location. That fact is important. It is undisputed that the system was disassembled in 1994, transported, and reinstalled in a new USDA facility. This move was made with the involvement of the defendant, . . . the movement does provide evidence that the initial installation was not intended to be permanent."). Because the shuttle coater during its twenty-one

---

[6] The court observes that it has stated that bolting down equipment and hardwiring it to a facility's electrical system are not dispositive of permanence. *See Ervin*, 674 F. Supp. 2d at 720.

(21) years in CSI's facility weighed approximately the same amount as a semi truck,[7] was attached to the building's floor and its utility systems, and was never moved from its original installation location, the court finds that the facts of this case establish the shuttle coater's "lengthy, useful life" and are distinguishable from *Ervin*, wherein the court focused on evidence that the conveyor system at issue and others like it had been disassembled, transported, and reinstalled in new locations relatively frequently. *See Ervin*, 674 F. Supp. 2d at 720–21. *See also id.* at 722 ("Although a close question of law, this Court does not conclude that the South Carolina courts would apply the statute of repose to the piece of moveable industrial equipment at issue in this case."). Furthermore, using the installation completion date of January 5, 2001, the eight-year statute of repose expired on January 5, 2009. Accordingly, because Plaintiff did not file this lawsuit until March 28, 2018, the court finds that New Gencoat is entitled to summary judgment because Plaintiff's claims are barred by the statute of repose located at S.C. Code Ann. § 15-3-640.[8] *Cf. Opsitnick v. Ray*, No. 5:14-CV-405-BO, 2015 WL 300420, at *3 (E.D.N.C. Jan. 22, 2015) ("Because this action is barred by the statute of repose, plaintiffs 'literally [have] no cause of action. The harm that has been done is damnum absque injuria-a wrong for which the law affords no redress.'") (citation omitted); *Steelcase, Inc. v. M.B. Haynes Corp.*, Civil No. 1:09cv443, 2011 WL 3439241, at *3 (W.D.N.C. Aug. 5, 2011) ("Whether the statute of repose has run is a question of law. 'Summary judgment is proper if the pleadings or proof show without contradiction that

---

[7] "A semi-truck, more commonly referred to as a semi, weighs anywhere between 5 to 12 tons without a trailer." *Weight of Stuff*, https://weightofstuff.com/9-things-that-weigh-about-10-tons/ (last visited Jan. 6, 2022).
[8] The court observes that Plaintiff's claims would still be barred even under the thirteen-year statute of repose that was in effect until the 2005 amendments to S.C. Code Ann. § 15-3-640. *See* Act No. 27, 2005 S.C. Acts 107, 109.

the statute of repose has expired.'") (internal and external citations omitted).[9]

## IV.    CONCLUSION

Upon careful consideration of the entire record and the parties' arguments, the court **GRANTS** New Gencoat's Motion for Summary Judgment (ECF No. 146) based on application of the statute of repose. All remaining pending Motions (ECF Nos. 147, 167, 172, 173) are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

January 6, 2022
Columbia, South Carolina

---

[9] Because this matter is barred by the statute of repose, the court declines to consider the parties' remaining arguments. *See In re. Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, MDL No. 8:11-mn-02000-JMC, C/A No. 8:12-cv-00087-JMC, 2013 WL 1194851, at *3 n.2 (D.S.C. Mar. 22, 2013) ("Because the court has found that the Georgia statute of repose bars any recognition of First Baptist's negligence claims, the court need not address GAF's remaining arguments concerning First Baptist's negligence claims."). *Cf. Lewis v. Kinder Morgan Energy Partners, L.P.*, C.A. No. 8:15-4792-HMH, 2017 WL 1541857, at *4 n.2 (D.S.C. Apr. 28, 2017) ("The court declines to address the Plaintiffs' remaining arguments in opposition to the Defendants' motion for partial summary judgment based on the statute of repose.").

14